**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ISAAC HERNANDEZ, | : | CIVIL ACTION NO.: |
|     Plaintiff | : | |
| | : | |
| v. | : | |
| | : | TRIAL BY JURY DEMANDED |
| APPLE AUTO WHOLESALERS OF | : | |
| WATERBURY LLC and WESTLAKE | : | |
| SERVICES, LLC d/b/a WESTLAKE | : | |
| FINANCIAL SERVICES, | : | |
|     Defendants | : | NOVEMBER 3, 2017 |
| | : | |
| | : | |

## COMPLAINT

### I. INTRODUCTION

1.    This is an action brought by a consumer against an automobile dealership for violation of the Truth in Lending Act (" TILA" ), 15 U.S.C. §§ 1601 *et seq.,* and for breach of the implied warranty of merchantability under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.* and Article 2 of the Uniform Commercial Code ("UCC"), Conn. Gen. Stat. §§ 42a-2-101 *et seq.*  Plaintiff also asserts pendent state law claims for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110 *et seq.*

### II. PARTIES

2.    Plaintiff, Isaac Hernandez ("Hernandez" or "Plaintiff"), is a natural person residing in Meriden, Connecticut.

3.    Apple Auto Wholesalers of Waterbury LLC ("Apple Auto") is a Connecticut limited liability company that operates a motor vehicle dealership in Waterbury, Connecticut.

4.     Westlake Services, LLC d/b/a Westlake Financial Services ("Westlake Financial") is a California limited liability company with a principal place of business in Los Angeles, California, that accepts the assignment of retail installment contracts from automobile dealerships.

### III.  JURISDICTION

5.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1691e, 15 U.S.C. § 2310(d)(1)(B) and Fed. R. Civ. P. 18(a).  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6.     This Court has jurisdiction over Apple Auto because it is organized under the laws of the state of Connecticut and regularly conducts business in this state.  This Court has jurisdiction over Westlake Financial because it regularly conducts business in this state.

7.     Venue in this Court is proper, because Plaintiff resides in Connecticut and the transaction occurred in this state.

### IV.  FACTUAL ALLEGATIONS

8.     Prior to July 17, 2017, Apple Auto advertised a 2011 Ford Taurus (the "Vehicle") for a sale price of $11,495.

9.     On or about July 17, 2017, Hernandez was interested in purchasing a vehicle, and he went to Apple Auto and met with Apple Auto's manager, CJ, who was also his girlfriend's father.

10.     CJ told Hernandez that the price of the Vehicle was approximately $11,000.

11.     Based on this representation, Hernandez agreed to purchase the Vehicle, and he paid a down payment of $500.

12.     Hernandez also traded in a 2003 Volkswagen Jetta and Apple Auto agreed to give him a trade-in allowance of $1,000.

13.     Hernandez returned to Apple Auto on or about July 20, 2017 to complete the transaction.

14.     Apple Auto presented Hernandez with a Retail Purchase Order that listed a cash sale price of $12,650, an amount that was more than the agreed upon price and $1,155 more than the advertised price.

15.     Apple Auto prepared a Retail Installment Contract (the "Contract") that listed a cash price of $13,427.82 including sales tax of $777.82, a trade-in allowance of $1,000, and a cash payment of $1,000, even though Hernandez paid Apple Auto only $500.

16.     The Contract provided for an amount financed of $12,206.82 and provided for 41 monthly installments of $400.93 beginning September 3, 2017, and it was assigned to Westlake Financial.

17.     Apple Auto also provided Hernandez with a Connecticut Licensed Dealer Vehicle Inspection Form K-208 that indicated that the Vehicle passed all areas of inspection.

18.     Immediately after taking delivery, Hernandez noticed that the Vehicle would shake when being driven and would make noises during braking.

19.     Hernandez contacted Apple Auto to make an appointment to have the Vehicle serviced, but Apple Auto did not return his calls.

20.     Hernandez became increasingly concerned about the condition of the Vehicle and he retrieved a Carfax report that reported two prior accidents, one of which noted structural damage.

21.     On or about August 25, 2017, Hernandez had the Vehicle inspected by an independent auto body expert.  The independent expert determined that the Vehicle had been involved in an event that damaged the front and rear of the Vehicle and caused structural damage, that the Vehicle was unsafe to drive, and was not in merchantable condition.  The inspection revealed that most body panels were not in proper alignment, the left rear frame rail was deformed and heat damaged, that there were damaged parts and missing paint on inside surfaces.

22.     Absent the prior accident and structural damage, the Vehicle would have had a fair retail value of approximately $13,525 but, because of its condition and history, it has a fair retail value of only $11,000.

23.     On information and belief, Apple Auto knew of the Vehicle's history and structural damage, because the damage would have been apparent to any automotive professional, and would have been apparent to a dealership performing the mandatory Connecticut safety inspection.

24.     Plaintiff agreed to purchase the Vehicle unaware of the structural damage.

25.     Plaintiff accepted delivery of the Vehicle unaware of its defects.

26.     On August 28, 2017, Plaintiff returned the Vehicle to Apple Auto.

27.     On August 29, 2017, Plaintiff, by his attorney, notified Apple Auto and Westlake Financial that he had revoked his acceptance of the Vehicle.

4

28.     The defendants have failed and refused to refund to Plaintiff his deposit or the value of his trade-in.

## V.  CAUSES OF ACTION

### A.        TRUTH IN LENDING ACT (APPLE AUTO ONLY)

29.     Apple Auto violated TILA in connection with the Contract by listing a false down payment on the Contract and not accurately itemizing the amount financed.

30.     Although the Contract reflected a state cash price of $12,650, the effective cash price of the Vehicle, once the false down payment is subtracted, was only $12,150.

31.     This increased sales tax attributable to the false down payment would not have been charged in a comparable cash transaction, and it should have been disclosed as a finance charge instead of included as part of the amount financed.

32.     Additionally, on information and belief, the purchase price of the Vehicle was increased to compensate Apple Auto for a discount fee charged by Westlake for accepting assignment of the Contract.

33.     Consequently, a portion of the increased price was due to the extension of credit and would not have been added to the purchase price in a comparable cash transaction.

34.     This portion of the increased price constituted a finance charge but was improperly included as part of the amount financed.

35.     Apple Auto is liable to Plaintiff for actual damages in the amount of the excess sales tax plus statutory damages of $2,000 for the TILA violations.

## B.  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

36.   This transaction was subject to the MMWA.

37.   The Vehicle is a consumer product as that term is defined in § 2301(1) of the MMWA, 15 U.S.C. §§ 2301-2312.

38.   A warranty that the Vehicle was in merchantable condition at the time of sale was implied by the contract by operation of Conn. Gen. Stat. § 42a-2-314.

39.   The Vehicle, as sold to Plaintiff, was not in merchantable condition at the time of sale due to its defects and structural deficiencies and consequently the Vehicle would not pass in trade without objection, was not fit for the purpose for which motor vehicles are ordinarily used, or both.

40.   Apple Auto knew, or reasonably should have known, that the Vehicle had damage that was not properly repaired and that it was not in merchantable condition because the defects would have been apparent to a dealership performing the mandatory Connecticut safety inspection.

41.   Plaintiff provided Apple Auto with a reasonable opportunity to repair the Vehicle, but it failed to do so.

42.   Apple Auto's breach of the implied warranty of merchantability was tortious in nature, in bad faith, was wanton and malicious, outrageous, and was undertaken with bad motive and with a reckless indifference to the Plaintiff's interests and the injury that he sustained.

43.   Hernandez is entitled to an order that he validly and effectively revoked acceptance of the Vehicle.

44.   As a result of the above-described actions, Apple Auto is liable to Plaintiff for his damages, including common law punitive damages, which together are expected to exceed $50,000.

45.   Plaintiff also seeks attorney's fees and costs under MMWA.

46.   Westlake Financial is subject to these claims and to Plaintiff's defenses under the Contract in accordance with the terms of the Contract and pursuant to Conn. Gen. Stat. § 52-572g.

## C. REVOCATION OF ACCEPTANCE FOR FRAUD OR MATERIAL MISREPRESENTATION

47.   Apple Auto knew or should have known that the Vehicle had prior damage and was poorly repaired, because the damage was evident to any automotive professional.

48.   Apple Auto committed fraud or material misrepresentations in the transaction by failing to disclose the structural damage.

49.   Apple Auto's fraudulent statements or material misrepresentations were tortious in nature and were made in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to Plaintiff's interests and the injury that he sustained.

50.   Plaintiff validly and effectively revoked acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608.

51.   Plaintiff is entitled to damages, common law punitive damages, and an order that he effectively revoked his acceptance of the Vehicle pursuant to Article 2 of the Uniform Commercial Code.

52.     Westlake Financial is subject to these claims and to Plaintiff's defenses under the Contract in accordance with the terms of the Contract and pursuant to Conn. Gen. Stat. § 52-572g.

### D.  CONNECTICUT UNFAIR TRADE PRACTICES ACT

53.     Apple Auto engaged in unfair and deceptive acts and practices in violation of CUTPA as follows:

a.  Its violations of TILA;

b.  It knowingly sold Hernandez the Vehicle even though it was not safe to drive and was not in merchantable condition;

c.  It failed to disclose the Vehicle's defects in a CT DMV K-208 disclosure form as required by Conn. Gen. Stat. § 14-62(g);

d.  It failed to complete the section of the CT DMV K-208 form in which it would have certified that it had inspected the Vehicle and either certified that it was safe for legal operation on public roadways or, alternatively, disclosed any defects that rendered the Vehicle not safe to drive, as required by Conn. Gen. Stat. § 14-62(g);

e.  It failed to perform a safety inspection on the Vehicle as required by Conn. Gen. Stat. § 14-62(g) or, if it did perform a safety inspection, it sold the Vehicle notwithstanding the defects;

f.  It sold the Vehicle for more than the advertised price, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1),which prohibits dealerships from failing to sell vehicles for the advertised price; and

g. It falsely stated that Hernandez paid a $1,000 deposit even though only $500.00 was requested or paid.

54.     Because the defects in the Vehicle were apparent to any automotive professional, Apple Auto's representations regarding the condition of the Vehicle was false, fraudulent, and issued in bad faith.

55.     As a result of Apple Auto's conduct, Hernandez has suffered ascertainable losses of money and property in that he paid a down payment of $500, he lost the value of his trade-in of $1,000, he paid to have the Vehicle inspected, and he has lost use of the Vehicle.

56.     For Apple Auto's CUTPA violations, Hernandez is entitled to actual damages, attorney's fees and costs, and, in the discretion of the Court, punitive damages.

57.     Westlake Financial is subject to these claims and to Plaintiff's defenses under the Contract in accordance with the terms of the Contract and pursuant to Conn. Gen. Stat. § 52-572g.

Wherefore, Plaintiff claims actual damages, punitive damages pursuant to CUTPA; common law punitive damages, and attorney's fees and costs, and an order that Plaintiff validly revoked acceptance of the Vehicle.

PLAINTIFF, ISAAC HERNANDEZ,

By: /s/ *Daniel S. Blinn*
    Daniel S. Blinn (ct02188)
    dblinn@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax (860) 571-7457