UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ISAAC HERNANDEZ, | : | CIVIL ACTION NO.: |
| Plaintiff | : | 3:17-cv-1857-VAB |
| | : | |
| v. | : | |
| | : | |
| APPLE AUTO WHOLESALERS OF | : | |
| WATERBURY LLC and WESTLAKE | : | |
| SERVICES, LLC d/b/a WESTLAKE | : | |
| FINANCIAL SERVICES, | : | |
| Defendants | : | DECEMBER 4, 2019 |

**REPLY TO WESTLAKE FINANCIAL SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICE'S OBJECTION TO SUMMARY JUDGMENT AND OBJECTION TO ITS CROSS MOTION FOR SUMMARY JUDGMENT**

I.   **INTRODUCTION**

The plaintiff, Isaac Hernandez, submits the following reply to Defendant Westlake Services, LLC d/b/a Westlake Financial Services' ("Westlake's") Objection to Plaintiff's motion for summary judgment. This shall also serve as his objection to Westlake's cross motion for summary judgment as the same arguments as set forth in both.

Plaintiff notes at the onset that Westlake has failed to file its objection to Plaintiff's summary judgment motion (ECF #90, hereinafter the "Objection") in compliance with Local Rule 56(a)(2). Westlake has provided only a partial affidavit – it appears to be missing a page and the reference exhibit was not attached. Additionally, Westlake failed to file the required Local Rule 56(a)(2) Statement. Consequently, it is proper under Local Rule 56(a)(3) for the Court to deem the evidence admitted in accordance with the Rule 56(a)(1) Statement as established for purposes of Plaintiff's

motion for summary judgment  Such result would be particularly appropriate where the affidavit was incomplete and void of any documentary support.[1]

Additionally, Westlake has filed its own cross motion for summary judgment (ECF #91, hereinafter the "Cross Motion", collectively with "Objection" referred to as "Briefs"). Pursuant to ECF #76, this court set a due date of September 6, 2019 for the filing of any dispositive motion. Westlake's cross motion for summary judgment was filed November 13, 2019, more than two months after the deadline prescribed by the court. No motion to extend this deadline was filed by Westlake, and the motion should be denied as untimely. Additionally, Westlake failed to file a Local Rule 56(a)(1) Statement in support of its motion.

However, as the Cross Motion and the Objection appear to be substantially identical, Plaintiff requests that this reply also serve as the objection to the Cross Motion. Plaintiff has not filed a Local Rule 56(a)(2) and asks that he rely upon his own Rule 56(a)(1) as setting forth the facts applicable to the cross motion.

## II.    ARGUMENT

### a.  Factual Discrepancies between Plaintiff's Summary Judgment Motion and Westlake's Filings

### i.  Westlake Was a Holder of the Contract at Least Until October 17, 2019

Westlake asserts that it was no longer a holder of the subject retail installment

---

[1] It is not the role of opposing parties or the court to parse incomplete or obscure pleadings. *See Direct Lineal Descendants of Jack v. Sec'y of the Interior,* No. 3:13-CV-00657-RCJ, 2014 WL 3697335, at *1, on reconsideration, No. 3:13-CV-00657-RCJ, 2014 WL 5439781 (Plaintiffs effectively consented to motion to vacate when their opposition was filed without substance or in compliance with local rules.); *See also Sokoya v. Downey,* 2009 WL 773523 (C.D.Ill. Mar. 20, 2009) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)) ("It is not the role of the Court to parse the parties' exhibits to construct the facts. Judges are not 'like pigs, hunting for truffles buried in briefs.'"); *DeSilva v. DiLeonardi,* 181 F.3d 865, 867 (7th Cir. 1999) (Nor are they archaeologists searching for treasurer.)

contract as of September 3, 2017. Briefs, p. 4. It is unclear the basis for this claim and Westlake did not attach any document purporting to confirm this assertion.

Plaintiff gave notice of revocation of acceptance on August 29, 2017. See Hernandez Aff. ¶ 24, Exhibit E. According to Westlake's "Reassignment of Contract", Exhibit 1 to Plaintiff's Rule 56(a)(1) statement, the date of the reassignment to Apple Auto was October 13, 2017. Westlake has provided no evidence to support that it was not the holder of the contract as of September 3. Indeed, the Reassignment of Contract asserts that Plaintiff was 40 days late on payment as of the reassignment. This indicates that Westlake was the holder of the contract 40 days prior, on August 26, until the October 13 reassignment. September 3, 2017 is merely the due date of the first payment under the Contract. See Exhibit C to Plaintiff's Rule 56(a)(1) statement. The September 3, 2017 date as the last day it held the Contract is even contradicted by the part of the John Schwartz Affidavit ("Schwartz Affidavit") that was filed. It stated that for Westlake's purposes the "loan is fully paid and satisfied and has been so since October 13, 2017." Schwartz Affidavit, ¶ 21.

Westlake actually goes so far to claim that "the Defendant was as a Holder in due course and within the meaning of the statute for only approximately thirty (30) days. **During that time, no claims were made to Westlake.** There is no basis for liability." (Emphasis added.) Westlake makes this statement with complete disregard to Exhibit E to the Hernandez Affidavit (as well as ¶ 24 of Hernandez' Aff.) which established that Plaintiff sent a certified letter to Westlake on August 29, 2017 providing a detailed account of his claims. Westlake provides no evidence or even a statement that it did not receive this letter, which was prominently attached as an exhibit to Plaintiff's affidavit

and included in the Rule 26(a)1) Statement.

In sum, Westlake's factual account of events is so inconsistent and unsupported that rendered much of its legal argument untenable. Its failure to respond to the specific and detailed time-line in the Plaintiff's Rule 26(a)(1) Statement provide grounds to disregard it altogether.

### ii.  There Is No Evidence that the Contract Does Not Have an Outstanding Balance

Westlake repeatedly makes the specious argument that no money is owed under the Contract. Brief, pp. 4, 9, 10, 12, 14. It bases this on the idea that because it reassigned the Contract to Apple Auto before Plaintiff made any payments, that no money is due under the Contract. However, Westlake has submitted no evidence that the Contract was paid or cancelled. As argued in the Summary Judgment motion, lenders cannot avoid holder liability by strategically reassigning a contract when it gets wind that a lawsuit may be filed.

### b.  Common Law Holder Liability

Plaintiff did not assert that Westlake was liable under a common law theory of holder liability and thus need not address Westlake's argument on this subject. Briefs, pp. 6-8.

### c.  Westlake Is Liable Under Conn. Gen. Stat. § 52-572g for the Amount Then Outstanding Under the Contract

Westlake opens its argument regarding § 52-572g with the assertion that "[t]here is no evidence before the Court tending to establish that Westlake intended to assume liability for actions of the Defendant Apple Auto before the assignment." Westlake has

no basis to make this statement, as the Contract it agreed to accept contained, pursuant

to the FTC Holder Rule, the following language:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS
> SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD
> ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED
> PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY
> HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY
> THE DEBTOR HEREUNDER.

Westlake is in the business of accepting retail installment sales contracts[2] and is well

aware or should be aware that all consumer contracts in compliance with the FTC's rule

contain that language. Unlike the Holder Rule, § 52-572g provides no requirement that

any language must be contained in a retail installment sales contract. Nevertheless, by

doing business in Connecticut and obtaining a license to act as a consumer finance

company[3], it is aware that it is submitting itself to the laws of Connecticut.

Westlake's citation to *Brett Stone Painting* & *Maint., LLC v. New England Bank*,

143 Conn. App. 671 (2019) is irrelevant, because that case does not involve a

consumer sales contract. Brief, p. 8. The same holds true for its citation to the C.J.S.

Its citation to *Tirado v. Ofstein*, No. HHDCV054014648S, 2008 WL 902506, at

*16 (Conn. Super. Ct. March 14, 2008), is also not helpful to disclaim § 52-572g liability.

*Tirado* held that "Accordingly, [assignee] Atlantic is liable to the plaintiff for all claims

that can be asserted against Ofstein limited to the amount of outstanding indebtedness

under the retail installment contract, pursuant to General Statutes § 52-572g." *Id.* There

is no indication that this liability would exist only if the outstanding indebtedness was

---

[2] Westlake Financial Services – About Us, available online at https://careers.westlakefinancial.com/why-westlake/ (Last accessed November 27, 2019).
[3] A list of sales finance companies licensed by the Connecticut Department of Banking is available at https://portal.ct.gov/-/media/DOB/Consumer-Credit-Licenses/sales_finance_companies.xlsx?la=en (Current to November 1, 2019). Westlake is licensed according to this list.

owed to Atlantic, the assignee, or another party. Again, Westlake has not provided any evidence that there is no debt outstanding under the Contract that it reassigned it to Apple Auto after receiving a demand letter from Plaintiff.

As discussed above, there is no evidence that the Contract balance is zero, as argued by Westlake. There may be nothing currently owed to Westlake after its reassignment, but Westlake did not present evidence and none is known to Plaintiff stating that the Contract has been cancelled and there is no debt outstanding.

While Westlake claims that it did not have notice of Plaintiff's claims while it held the Contract, Briefs, p. 10, there is no evidence to contradict Plaintiff's evidence regarding the letter he sent through counsel to Apple Auto and Westlake stating that he revoked acceptance and put both parties on notice of his claims. Moreover, notice to Westlake is not even a requirement under § 52-572g, which states "the buyer shall have made a prior written demand on the seller with respect to the transaction." Plaintiff's motion establishes that such notice was provided to the seller, the co-defendant Apple Auto.

### d.  The Plaintiff's Claim for Assignee Liability Is not Limited to § 52-572g

Westlake argues that it is not liable under the FTC Holder Rule, because Plaintiff did not specifically plead such liability. Brief, p. 10. However, Plaintiff did plead the specific contract provision of the Holder Rule, though. See ECF #1, ¶¶ 46, 52, and 57. That contractual provision reads:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED

PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY
HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY
THE DEBTOR HEREUNDER.

The presence of this exact language in the Contract is mandated by the FTC Holder
rule, so Westlake is trying to make a distinction without a difference. The extent of
Westlake's liability under the Holder Rule is limited to the $2,000 down payment Plaintiff
made.

While Westlake provides some analysis of the *Duran* case[4], it is unclear from the
argument how *Duran* relieves Westlake from liability under the holder rule, as it is a
case very similar to the set of facts here: a holder reassigned a contract, but that did not
terminate its liability under the Holder Rule.

### e. Plaintiff Does not Dispute that His Damages, Inclusive of Attorney's Fees, Would Be Capped With Respect to Westlake

Westlake finally cites to a recent FTC interpretation[5] of the Holder Rule that
stated that a consumer may collect attorney's fees under a fee shifting provision in
excess of the cap under the rule. Plaintiff does not dispute the fees are capped by the
FTC Holder Rule at the amount paid under the Contract. However, under § 52-572g
they are also subject to the sum of that cap.

As explained in the underlying summary judgment motion, the amount financed
under the Contract was $12,206.82. This amount was never reduced, because Plaintiff
made no payments. Interest of 17.59% ran on this amount from July 20, 2017 through

---

[4] 2017 WL 6334220, at *2 (2017 Cal. App. 4 Dist.), reh'g denied (Jan. 4, 2018) citing Szwak, The FTC "Holder" Rule (2006) 60 Consumer Fin. L.Q. Rep. 361
[5] Federal Register, Vol. 84, No. 85, p. 18713 (May 2, 2019).

the date of the written demand, or August 29, 2017. This amounts to $235.31.[6] The total amount that was due on that date was therefore $12,442.13. Westlake's liability under Conn. Gen. Stat. § 52-572g is consequently capped at $12,442.13.

Westlake is also liable under the Contract's incorporation of the FTC Holder language, which has a different cap upon liability, i.e., the amount paid by the consumer under the contract. In this case, Plaintiff paid $2,000.  Westlake's total liability is therefore $14,442.13. Westlake has cited no authority that would limit Plaintiff's recovery to one of these two provisions.

Holder statutes are to be liberally construed and given effect when they fulfill their goal of protecting consumers. *Vasquez v. Superior Court* 4 Cal.3d 800, 823, 94 Cal.Rptr. 796, 484 P.2d 964.(Cal. 1971). This policy is predicated on the notion that "a judgment against the seller alone would represent a Pyrrhic victory because the ... victorious consumers remain liable to the finance companies, which as the assignees of the installment contracts claim that they are entitled to payment even if the seller acted fraudulently.... Obviously, if [the consumers] are to be made whole for the wrongs allegedly done to them, the finance company ... must be held liable as assignees if [the seller] is culpable." *Id.* at 821-822. This notion is not new. As far back as 1953, the Florida Supreme Court recognized the imperative of holding finance companies accountable in order to police the marketplace for consumers: "[T]he finance company is better able to bear the risk of the dealer's insolvency than the buyer and in a far better position to protect his interests against unscrupulous and insolvent dealers." *Mutual Finance Co. v. Martin,* 63 So.2d 649, 653, 44 A.L.R.2d 1 (Fla. 1953). The court further

---

[6] Per diem of $5.8827 x 40 days.

noted that "[i]f this opinion imposes great burdens on finance companies it is a potent argument in favor of a rule which will afford protection to the general buying public against unscrupulous dealers in personal property." *Id.*

The variation in the instant case is that the finance company, either because of the demand letter or because of non-payment after revocation, reassigned the Contract before receiving the first payment. The policy aim that Westlake is advancing would reward a lender for strategically reassigning a consumer contract when it gets word that a consumer may take legal action. The court in *Duran* realized this risk and held the lender to account. This court should do the same.

## III.   CONCLUSION

For the above-stated reasons, Plaintiff's motion for summary judgment should be granted and Westlake's cross motion for summary judgment should be denied.

PLAINTIFF, ISAAC HERNANDEZ,

By: /s/ *Daniel S. Blinn*
       Daniel S. Blinn (ct02188)
       Brendan L. Mahoney (ct29839)
       Consumer Law Group, LLC
       35 Cold Spring Road, Suite 512
       Rocky Hill, Connecticut 06067
       Tel (860) 571-0408
       Fax (860) 571-7457
       dblinn@consumerlawgroup.com
       bmahoney@consumerlawgroup.com

CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ *Daniel S. Blinn*
Daniel S. Blinn