UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ISAAC HERNANDEZ,
    *Plaintiff*,

    v.

APPLE AUTO WHOLESALERS OF
WATERBURY LLC, and WESTLAKE
SERVICES, LLC d/b/a WESTLAKE
FINANCIAL SERVICES
    *Defendants.*

No. 3:17-cv-1857 (VAB)

**ORDER CERTIFYING QUESTION TO THE CONNECTICUT SUPREME COURT**

Isaac Hernandez ("Plaintiff") bought a car from Apple Auto Wholesalers of Waterbury LLC ("Apple Auto") in July 2017 and financed it through an installment contract. Apple Auto assigned the installment contract to Westlake Services, LLC, doing business as Westlake Financial Services ("Westlake"). Mr. Hernandez sued both Apple Auto and Westlake under federal and state law, seeking actual and punitive damages, as well as attorney's fees and costs.

Mr. Hernandez and Westlake have moved for summary judgment against the other. Mr. Hernandez also has moved for default judgment against Apple Auto, following a default entry entered against Apple Auto for failure to defend against Mr. Hernandez's claims.

The Court has granted Mr. Hernandez default judgment against Apple Auto in a separate ruling. His claims against Westlake, however, turn on the applicability of Conn. Gen. Stat. § 52-572g. For the reasons below, the Court certifies questions to the Connecticut Supreme Court.

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute the facts bearing on certification. The Court sets forth the factual and procedural background as relevant. For a more detailed background, refer to Ruling and Order, ECF No. 100 (May 18, 2020).

Mr. Hernandez purchased a car from Apple Auto in July 2017. Local Rule 56(A)1 Statement ¶ 1–2, ECF No. 86-5 (Sept. 6, 2019) ("Pl.'s SOMF"). Apple Auto prepared a Retail Installment Contract (the "Contract") for the vehicle. Pl.'s SOMF ¶ 7; Hernandez Aff. Ex. C, ECF No. 86-3 at 14–18 (Retail Installment Contract (July 20, 2017)) ("Contract").

Shortly after Mr. Hernandez purchased the vehicle, Apple Auto assigned the Contract to Westlake. Pl.'s SOMF ¶ 12.

On August 28, 2017, before making any payments under the Contract and without having received any response from Apple Auto, Mr. Hernandez returned the vehicle to Apple Auto by leaving it in Apple Auto's parking lot. Pl.'s SOMF ¶ 36. On August 29, 2017, he sent a letter through his counsel to Apple Auto and Westlake. Hernandez Aff. Ex. E, ECF No. 86-3 at 21–24 (Letter from Daniel Blinn to Apple Auto and Westlake re: Isaac Hernandez—2011 Ford Taurus SHO (Aug. 29, 2017)) ("Demand Letter").

On October 13, 2017, Westlake reassigned the Contract back to Apple Auto. Pl.'s SOMF ¶ 39; Pl.'s SOMF Ex. 1, ECF No. 86-5 at 9 (Westlake Financial Services, Reassignment of Contract (Oct. 13, 2017)) ("Contract Reassignment").

On November 3, 2017, Mr. Hernandez filed this suit. Compl., ECF No. 1 (Nov. 3, 2017).

On July 1, 2019, Mr. Hernandez moved for default entry against Apple Auto. Mot. for Default Entry, ECF No. 82 (July 1, 2019). The Court granted default entry against Apple Auto the next day. Order, ECF No. 83 (July 2, 2019).

On September 6, 2019, Mr. Hernandez filed a motion for default judgment as to Apple Auto, together with a motion for summary judgment against Westlake, and supporting filings. Mot. for Default J. as to Apple Auto, ECF No. 86 (Sept. 6, 2019); Mot. for Summ. J. as to Westlake, ECF No. 86-1 (Sept. 6, 2019); Mem. of Law in Supp. of Mot. for Default J. and Mot. for Summ. J., ECF No. 86-2 (Sept. 6, 2019) ("Pl.'s Mem."); Pl.'s SOMF; Hernandez Aff., ECF No. 86-3 at 1 (Aug. 26, 2019); Hernandez Aff. Exs. A–E, ECF No. 86-3 at 5–24; Collins Aff., ECF No. 86-4 at 1–2 (Aug. 29, 2019); Collins Aff. Exs. A–B, ECF No. 86-4 at 3–34.

On November 12, 2019, Westlake filed an opposition to Plaintiff's motion for summary judgment, along with a supporting affidavit. Def.'s Opp'n to Summ. J., ECF No. 90 (Nov. 12, 2019) ("Westlake Mem."), Schwartz Aff., ECF No. 90-1; and a California state appellate court decision, Exhibit, ECF No. 90-2 (Oct. 28, 2019) (*Duran v. Quantum Auto Sales, Inc.*, No. G053712, 2017 WL 6334220 (Cal. Ct. App. Dec. 12, 2017)).

On November 13, 2019, Westlake also moved for summary judgment against Mr. Hernandez, and submitted a memorandum of law identical to its objection to Mr. Hernandez's motion for summary judgment, and the same affidavit and California state appellate decision. *See* Def.'s Cross Mot. for Summ. J., ECF No. 91 (Nov. 13, 2019); Mem. of Law in Supp. of Cross Mot. for Summ. J., ECF No. 91-1 (Nov. 13, 2019); Schwartz Aff., ECF No. 91-2 (Oct. 28, 2019); Exhibit, ECF No. 91-3 (*Duran*, 2017 WL 6334220).

On December 4, 2019, Mr. Hernandez filed a reply in support of his motion for summary judgment, which also served as his response to Westlake's cross-motion for summary judgment. Reply and Obj. to Cross Mot. for Summ. J., ECF No. 94 (Dec. 4, 2019) ("Pl.'s Reply").

On April 16, 2020, the Court held a telephonic motion hearing on the cross-motions for summary judgment and the motion for default judgment. Minute Entry, ECF No. 97 (Apr. 16,

2020). During the hearing, "[t]he Court invited the parties to submit, jointly to the extent they can and otherwise separately, additional briefing on what questions the Court should certify to the Connecticut Supreme Court, should the Court decide to certify any questions." *Id.*

On April 27, 2020, Mr. Hernandez and Westlake each submitted a response to the Court's request for additional briefing on what questions, if any, should be certified to the Connecticut Supreme Court. Pl.'s Resp., ECF No. 98 (Apr. 27, 2020); Westlake Resp., ECF No. 99 (Apr. 27, 2020).

On May 18, 2020, the Court granted default judgment to Mr. Hernandez against Apple Auto only, found Apple Auto liable under the Truth in Lending Act (TILA), the Connecticut Unfair Trade Practices Act (CUTPA), and for breach of the implied warranty of merchantability, Ruling and Order, ECF No. 100 (May 18, 2020), and cancelled the Contract. *Id.*

Mr. Hernandez asserts that Westlake is liable as assignee of the Contract for breach of the implied warranty, revocation of acceptance, and CUTPA. Compl. ¶¶ 46, 52, 57.

**II.     STANDARD OF REVIEW**

Under Connecticut law, "[t]he Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." *Karas v. Liberty Ins. Corp.*, No. 3:13-cv-01836 (SRU), 2018 WL 2002480, at *1 (D. Conn. Apr. 30, 2018) (quoting Conn. Gen. Stat. § 51-199b(d)), *certified question answered*, No. 20149, 2019 WL 5955947 (Conn. Nov. 12, 2019).

When deciding whether to certify a question to the Connecticut Supreme Court, a court should consider, among other factors, "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the

litigation." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007). "Where a question . . . implicates the weighing of policy concerns, principles of comity and federalism strongly support certification." *Parrot v. Guardian Life Ins. Co. of Am.*, 338 F.3d 140, 144 (2d Cir. 2003).

## III.     DISCUSSION

The Second Circuit "ha[s] long recognized that state courts should be accorded the first opportunity to decide significant issues of state law through the certification process[.]" *The Cadle Co. v. Fletcher*, 804 F.3d 198, 202 (2d Cir. 2015), *certified question answered sub nom. Cadle Co. v. Fletcher*, 324 Conn. 228, 151 A.3d 1262 (2016) (quoting *Munn v. Hotchkiss Sch.*, 795 F.3d 324, 334 (2d Cir. 2015)). Conn. Gen. Stat. § 51-199b(d) authorizes "[t]he Supreme Court [to] answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state."

Conn. Gen. Stat. § 52-572g provides that:

> Any holder . . . of a promissory note, contract or other instrument . . . evidencing an indebtedness, signed or executed by a buyer in connection with a credit transaction covering consumer goods . . . shall be subject to all of the claims and defenses which the buyer has against the seller arising out of the transaction . . . limited to the amount of indebtedness then outstanding in connection with the credit transaction, provided the buyer shall have made a prior written demand on the seller with respect to the transaction.

Conn. Gen. Stat. § 52-572g(a) ("Section 52-572g").

There is, however, very little Connecticut caselaw on the meaning of Section 52-572g. In a Connecticut Superior Court decision involving similar facts, a car buyer brought a lawsuit against both the seller and the financial company assigned the car's installment contract. *Tirado v. Ofstein*, No. HHD-CV-054014648-S, 2008 WL 902506 (Conn. Super. Ct. Mar. 14, 2008). The court held the financial company "liable to the plaintiff for all claims that c[ould] be asserted

5

against [the seller] limited to the amount of outstanding indebtedness under the retail installment contract," Section 52-572g, because the plaintiff had notified the seller and the financing company of her claims. *Id.* at *16. But the financing company in that case never reassigned the contract, as Westlake did here, leaving unanswered whether the buyer's claims attached to the financing company immediately following her notification of her claims or not until the time she filed her lawsuit.

In addition to the need for clarity with respect to Section 52-572g, there is the related issue of the application of the FTC Holder Rule, which requires that all consumer credit contracts include the following language:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

*King v. A Better Way Wholesale Autos, Inc.*, No. 3:17-cv-885 (AWT), 2018 WL 5993925, at *2 (D. Conn. Sept. 10, 2018) (quoting at 16 C.F.R. § 433.2(a)). The Contract here contains the notice required by the Holder Rule. *See* Contract, ECF No. 86-3 at 18.

The FTC Holder Rule language "preserves a consumer's right to assert the same legal claims and defenses against the assignee of a credit contract as that consumer could have asserted against the assignor." *Rivera v. Berlin City's Vt. Remarketed Autos, Inc.*, No. 2:19-CV-00159, 2020 WL 289464, at *3 (D. Vt. Jan. 21, 2020) (quoting *Pierre v. Planet Auto., Inc.*, 193 F. Supp. 3d 157, 174 (E.D.N.Y. 2016)); *see also In re Lewis*, 506 F.3d 927, 930 n.7 (9th Cir. 2007) (noting that the FTC's Holder Rule "requires purchase money loan agreements to contain a notice to all loan holders that preserves the borrower's ability to raise claims and defenses

6

against the lender arising from the seller's misconduct" (citing 16 C.F.R. § 433.2(a))); *Turner v. CIT Grp./Sales Fin., Inc.*, 154 F. App'x 2, 3 (9th Cir. 2005) ("As a matter of contract, any claims or defenses that the [buyers] could assert against the seller [ ] are also valid claims or defenses against [the contract holder]."); *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998) ("[T]he Holder Notice [ ] allow[s] the debtor to raise many claims and defenses against the assignee that he or she may have against the original seller.").[1]

The Holder Rule "was promulgated in order to cure business practices that 'separated the buyer's duty to pay for goods or services from the seller's reciprocal duty to perform as promised . . . [and where] [c]reditors dunned consumers and collected debts despite the consumers' claims and defenses against the sellers." *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 544 (E.D.N.Y. 2006) (alterations in the original) (quoting Fed. Trade Comm'n, 57 Fed. Reg. 28814, 128815). Where a claim against the seller fails, the claim must also fail against the credit holder. *Id.*

Neither the Second Circuit nor any Connecticut court, however, has substantially addressed the relationship between the FTC Holder Rule and state laws regarding assignee liability.

---

[1] The notice required by the Holder Rule is frequently asserted by plaintiffs who bought used cars against their auto loan holders. *See, e.g.*, *Rivera*, 2020 WL 289464; *Pyskaty v. Wide World of Cars, LLC*, No. 15 CIV. 1600 (JCM), 2019 WL 917153 (S.D.N.Y. Feb. 25, 2019); *King*, 2018 WL 5993925; *Pierre*, 193 F. Supp. 3d 157; *Angelillo v. Harte Nissan, Inc.*, No. 3:09-cv-1313 (WWE), 2010 WL 569887 (D. Conn. Feb. 17, 2010); *Tirado*, 2008 WL 902506; *Diaz*, 424 F. Supp. 2d 519.

"[I]f a used car dealer who fraudulently sells a lemon also arranges the buyer's financing through a bank, the buyer may rely on the dealer's fraud as a defense against repaying the bank loan." *Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*, 168 F.3d 1362, 1365 (D.C. Cir. 1999) ("Adopted by the FTC in 1976, the Holder Rule requires purchase money loan agreements . . . arranged by sellers to contain a notice to all loan holders that preserves the borrower's ability to raise claims and defenses against the lender arising from the seller's misconduct." (citing 16 C.F.R. § 433.2(a)); *see also Taylor*, 150 F.3d at 693 (observing that under the contractual language required by the Holder Rule, "[i]f the cars [buyers] purchased turn out to be lemons and they assert a right to withhold payment against the sellers, they may also assert the same right against the assignees").

In Connecticut, one Superior Court has analyzed assignee liability under the FTC Holder Rule alongside its analysis under Section 52-572g. *Jacques v. A Better Way Wholesale Autos, Inc.*, No. CV-17-6013046-S, 2019 WL 254304, at *1, *3 (Conn. Super. Ct. Jan. 17, 2019) ("The second and fourth counts respectively allege breach of written warranty and breach of implied warranty against Wells Fargo as the assignee or holder of the contract pursuant to the contract terms, which incorporate the Federal Trade Commission's 'holder rule,' and also pursuant to General Statutes § 52-572g. . . . [T]he second and fourth counts may not be stricken because assignee or holder liability is authorized by General Statutes § 52-572g 'limited to the amount of indebtedness.'" (citing *Tirado*, 2008 WL 902506)). In that similar case, a plaintiff buyer sued a car dealership as well as a financial company assigned the contract. *Id.*

But that court did not squarely address whether the limit on assignee liability was governed by the FTC Holder Rule or Section 52-572g, or whether these limits applied cumulatively. *See also Tirado*, 2008 WL 902506, at *16 (finding assignee liable for outstanding indebtedness under the retail installment contract under Section 52-572g without addressing potential liability under the FTC Holder Rule language incorporated into the contract).

In any event, no Court of Appeals, district court within the Second Circuit, or Connecticut state court has addressed whether a holder's reassignment of a loan before the filing of a lawsuit negates that holder's liability under the Holder Rule or under any state assignee liability laws. It appears that few courts at all have addressed the issue. And no court has addressed the relationship between the FTC Holder Rule and Conn. Gen. Stat. § 52-572g. Nor, as explained above, have any courts addressed the effect of such reassignment on assignee liability under Conn. Gen. Stat. § 52-572g.

Mr. Hernandez argues that Westlake is liable under both Conn. Gen. Stat. § 52-572g and the FTC Holder Rule. Pl.'s Mem. at 17. Mr. Hernandez argues that Section 52-572g does not "condition [assignee] liability upon a defendant presently holding the contract." Pl.'s Mem. at 20. He argues that the statutory "language contemplates that there may be multiple holders, each of which may be liable for seller misconduct." *Id.* He argues further that Westlake's liability under Section 52-572g was triggered when he made prior written demand for his claims upon Apple Auto. *Id.* at 21.

But Westlake argues that it "had nothing to do with Apple Auto's actions" and that Mr. Hernandez cannot recover against Westlake because, by the time Mr. Hernandez filed this lawsuit, Westlake had reassigned the Contract back to Apple Auto. Westlake Mem. at 4, 9. In Westlake's view, however, because Westlake reassigned the Contract back to Apple Auto before Mr. Hernandez filed his lawsuit, and Westlake never received any money under the Contract, "there can be no remedy under Conn. Gen. Stat § 57-572g[.]" Westlake Mem. at 9. Westlake argues that it was no longer a "holder in due course" at the time Mr. Hernandez filed this lawsuit, and "[t]here is no Connecticut or Federal case law interpreting Conn. Gen. Stat. § 52-575g as applying to '*former holder*.'" *Id.* at 9, 11 (emphasis in the original).

Westlake suggests the Court should certify questions to the Connecticut Supreme Court because issues of assignee liability are important to both lenders and consumers throughout Connecticut, and because there are no Connecticut Appellate Court or Supreme Court decisions addressing the applicability of Conn. Gen. Stat. § 52-572g to innocent lenders in Westlake's position. Westlake Resp. at 1. Westlake proposes the following questions for certification:

> 1. Whether an assignees' liability under Conn. Gen. Stat. §52-572g, which is limited to "the amount of indebtedness then outstanding in connection with the credit transaction", is determined at the time the claim arose, at the time the consumer made a prior written demand

9

>on the seller with respect to the transaction at the time the suit commences, at the time of the judgment, or at some other time?
>
>2. Whether under Conn. Gen. Stat. §52-72g the reassignment back to the seller assignor by an assignee of a promissory note, contract, or other instrument terminates liability of the assignee and if so at what point must [th]e reassignment occur to terminate liability?
>
>3. How are the amounts paid under the contract determined by the court when the contract contains the language mandated by 16 C.F.R 433 known as the Federal Trade Commission's Preservation of Consumer Claims and Defenses Rule?

*Id.* at 2.

Mr. Hernandez argues conversely that "the topics being considered for certification are [not] of sufficient public importance to justify certification to the Connecticut Supreme Court." Pl.'s Resp. at 1. He notes that while Conn. Gen. Stat. § 52-572g has been on the books for nearly fifty years, it has never been the subject of an appellate decision and has apparently only been addressed in passing once by a Superior Court. *Id.* He "submits that the [C]ourt should simply apply the plain meaning of the statute and impose liability upon Westlake for the amount outstanding at the time that the claim arose." *Id.* If the Court decides to certify questions, Mr. Hernandez proposes the following questions:

>1. An assignee's liability under Conn. Gen. Stat. § 52-572g is "limited to the amount of indebtedness then outstanding in connection with the credit transaction". At what point is this limit determined: (a) at the time that the claim arose, (b) at the time that consumer made a "prior written demand on the seller with respect to the transaction", (c) at the time that suit commences, (d) at the time of judgment, or (e) at some other time?
>
>2. Can an assignee avoid liability under Conn. Gen. Stat. § 52-572g by re-assigning the promissory note, contract or other instrument back to the seller?
>
>3. If the answer to No[.] 2 is in the affirmative, must the re-assignment be made prior to the time that the consumer has raised the claim with the assignee for liability to be avoided?

> 4. If the assigned obligation is in the form of a retail installment contract that includes the language mandated by 16 CFR 433, the Federal Trade Commission's Preservation of Consumer Claims and Defenses Rule, is the assignee liability under this incorporated contractual language cumulative to the statutory liability under Conn. Gen. Stat. § 52-572g?
>
> 5. If the answer to No. 4 is in the negative, is the limitation of the assignee liability equal to whichever is the higher of the two limitations?
>
> 6. If the answer to No. 5 is in the negative, does one of the limitations take precedence over the other and, if so, which limitation applies?

*Id.* at 2.

The Court agrees that the issues raised by the parties regarding assignee liability are of sufficient public importance and lack sufficient guidance from Connecticut courts, to warrant certification of versions of the questions proposed by parties.

First, the questions of assignee liability raised here will not only be determinative of liability in this case but will also have implications for lender liability in consumer cases brought against sellers and lenders across the state. Westlake notes that the issue is "one of immense importance" to it as a lender, because it will "affect all its loans in Connecticut." Westlake Resp. at 1. The issue is of equal importance to consumers, who frequently seek remedies against both the seller, based on breach of contract or unfair trade practices, and the creditor, based on assignee liability.[2] "The issues presented in this case are [thus] likely to recur and, consequently, their resolution will assist the administration of justice in both federal and state courts." *Parrot*, 338 F.3d at 145.

Second, the interpretation of Conn. Gen. Stat. § 52-572g has important public policy implications regarding the scope of assignee liability and the allocation of costs between an

---

[2] *See Jacques*, 2019 WL 254304; *Tirado*, 2008 WL 902506; *King*, 2018 WL 5993925; *Angelillo*, 2010 WL 569887; *Rivera*, 2020 WL 289464; *Pyskaty*, 2019 WL 917153; *Pierre*, 193 F. Supp. 3d 157; *Diaz*, 424 F. Supp. 2d 519; *Taylor*, 150 F.3d 689.

11

innocent lender and an innocent buyer where a seller is liable for breach of contract or unfair business practices. As a result, Connecticut "has a strong interest in deciding the issue[s] certified rather than having the only precedent on point be that of the federal court, which may be mistaken." *Parrot*, 338 F.3d at 145; *see also Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 110 F.3d 6, 9 (2d Cir.) (certifying question to the New York Court of Appeals "because of the lack of authoritative guidance on an issue with significant impact on New York contract law" and because resolution "ha[d] important implications for New York utility companies, regulators, and customers"), *certified question accepted*, 89 N.Y.2d 1055 (1997), *and certified question answered*, 92 N.Y.2d 458 (1998).

Finally, "there is no controlling appellate decision" on the issues of assignee liability raised here. *Parrot*, 338 F.3d at 144. "When existing authority is inconclusive, [the Second Circuit] ha[s] deemed certification appropriate." *Id.*

Additionally, "the Court is confident that if it were to decide this issue itself and the losing party were to take an appeal, the Second Circuit would certify the questions in this case to the Connecticut Supreme Court." *Ballou v. Law Offices Howard Lee Schiff*, P.C., 713 F. Supp. 2d 79, 80 (D. Conn. 2010), *certified question answered*, 304 Conn. 348, (2012).

These issues raise important public policy considerations, and "existing authority is inconclusive." *Parrot*, 338 F.3d at 144–45. For these reasons, the Court certifies the following questions to the Connecticut Supreme Court, based on the parties' proposed questions and the Court's own analysis:

1. When is the limit on assignee liability, "the amount of indebtedness then outstanding," determined under Conn. Gen. Stat. § 52-572g?

2. Can an assignee avoid liability under Conn. Gen. Stat. § 52-572g by re-assigning the promissory note, contract or other instrument back to the seller? If so, by when must the assignee reassign the loan to avoid liability?

3. If a retail installment contract includes the language mandated by 16 C.F.R. § 433, the FTC Holder Rule, is the assignee liability under this incorporated contractual language cumulative to the statutory liability under Conn. Gen. Stat. § 52-572g?

Of course, "[t]he Connecticut Supreme Court may modify th[ese] question[s] as it sees fit and add any pertinent questions of Connecticut law . . . that the Court chooses to answer." *Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency*, 644 F.3d 166, 173 (2d Cir. 2011). This Court "retains jurisdiction over this case" and will conduct further proceedings after "the Connecticut Supreme Court has either provided [this Court] with its guidance or declined certification." *Id.* This Court will make available to the Connecticut Supreme Court any part of the record in this case that might assist the Connecticut Supreme Court in its review of the issue.

## IV.   CONCLUSION

For the foregoing reasons, the Court certifies the following questions to the Connecticut Supreme Court:

1. When is the limit on assignee liability, "the amount of indebtedness then outstanding," determined under Conn. Gen. Stat. § 52-572g?

2. Can an assignee avoid liability under Conn. Gen. Stat. § 52-572g by re-assigning the promissory note, contract or other instrument back to the seller? If so, by when must the assignee reassign the loan to avoid liability?

3. If a retail installment contract includes the language mandated by 16 C.F.R. § 433, the FTC Holder Rule, is the assignee liability under this incorporated contractual language cumulative to the statutory liability under Conn. Gen. Stat. § 52-572g?

The Clerk of Court is respectfully ordered to effectuate the certification.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of May, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE